**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BILLY JOE BAILEY, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11-CV-747-JHP-PJC** |
| | ) | |
| **RICK SILVER; TROY NEWELL;** | ) | |
| **BRIAN BREWINGTON;** | ) | |
| **MEGAN DAVIS; JANET SMITH;** | ) | |
| **CITY OF BARTLESVILLE;** | ) | |
| **WASHINGTON COUNTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff, a state prisoner

appearing *pro se*. Plaintiff filed his federal civil rights complaint (Dkt. # 1) on November 29, 2011.

On March 13, 2012, he filed an amended complaint (Dkt. # 11).  Defendants filed Special Reports

(Dkt. #s 32, 34).  Defendants City of Bartlesville (City), Brewington, and Newell filed a motion for

summary judgment and brief in support (Dkt. # 33). Plaintiff filed a response to that motion (Dkt.

# 48) and Defendants filed a reply (Dkt. # 50). Defendants Silver and Davis filed a motion to

dismiss, or in the alternative, motion for summary judgment and brief in support (Dkt. # 35).

Plaintiff filed a response (Dkt. # 47) and Defendants Silver and Davis filed a reply (Dkt. # 51).

Lastly, Defendant Washington County (County) filed a motion to dismiss and brief in support (Dkt.

# 36).  Plaintiff filed a response (Dkt. # 53) and Defendant County filed a reply (Dkt. # 55). For the

reasons discussed below, the motion to dismiss filed by Defendant County shall be granted.  The

remaining Defendants are entitled to summary judgment and their motions shall be granted.

## *I. BACKGROUND*

In the "Nature of Case" section of his amended complaint (Dkt. # 11), Plaintiff provides the

following statement:

> Plf. was unconstitutionally seized, searched, detained by Def(s) police officers, one
> of the Def. Offs committed excessive use of force. (Assault and battery) on Plf.
> Resulting in serious physical injuries.  The Def(s) denied Plf. medical attention for
> and use to coerce confessions; and in county jail, Defs were deliberately indifferent
> to plf. serious injuries and treatment aid needs.

See Dkt. # 11.  Based on those facts, Plaintiff identifies three (3) causes of action, as follows:

> Count 1:     Defendants Brewington/Newell Act(s)/Omissions(s)/Action(s) of reckless
> disregard for known to def(s) truth and false statement(s)/information in
> probable affidavit to obtain search and seizure warrant violated plaintiff's 4th
> USCA rights "id" and each defendant is liable in damages for the
> acts/omissions/actions.

> Count 2:     Def. Newell without provocation of plf. and without justification used
> excessive physical force--assault and battery on plt. causing serious injuries,
> damages and harms to the pltf. Def. Newell is liable in damages.

> Count 3:     Def(s) Brewington, Newell, Johnson,[1] Abraham,[2] Smith, Silver, Megan, and
> Washington County were deliberately indifferent to the Plf's serious physical
> injuries and serious medical access, attention, treatment and care and
> treatment aid needs in violation of Plfs 4th USCA rights.

(Dkt. # 11).  He names seven (7) defendants: Rick Silver, Troy Newell, Brian Brewington, Megan

Davis,[3] Janet Smith, City of Bartlesville, and Washington County. In his request for relief, Plaintiff

asks for compensatory and punitive damages. (Dkt. # 11). As stated above, Defendant County seeks

---

[1]No one named "Johnson" is identified as a defendant in either the caption or the "Parties"
section of the amended complaint.

[2]No one named "Abraham" is identified as a defendant in either the caption or the "Parties"
section of the amended complaint.

[3]Defendant Davis spells her first name "Megaen" in her motion for summary judgment (Dkt. #
35).

to be dismissed for failure to state a claim upon which relief may granted. The remaining defendants seek summary judgment.

As a preliminary matter, the record reflects that Plaintiff failed to effect timely service of process on Defendant Janet Smith. The USM-285 Marshal service form filed for Defendant Smith included the statement that the Marshal had been unable to locate Ms. Smith and that she was "no longer employed by Washington County." See Dkt. # 18. By Order filed June 19, 2012 (Dkt. # 27), the Court directed Plaintiff to submit new service forms for Defendant Smith on or before July 20, 2012.  In addition, Plaintiff was advised that if he failed to submit new forms, Defendant Smith would be dismissed without prejudice from this action based on Plaintiff's failure to effect timely service.  See Dkt. # 27.  Plaintiff failed to submit new service forms and has failed to effect service on Defendant Smith.  Therefore, Defendant Smith shall be dismissed without prejudice.

## II.  UNCONTROVERTED FACTS

In their motions to dismiss and/or motions for summary judgment, Defendants present evidence, including affidavits, medical records, jail records, and state court records, contradicting Plaintiff's allegations.  See Dkt. #s 33, 35, 36, attached exhibits. In response to the motions filed by Defendants, Plaintiff provides no evidence and continues to rely on mere allegations. When, as in this case, "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Johnson v. Roberts, 410 Fed. Appx. 104, 106-07 (10th Cir. 2010) (unpublished)[4]; see also Fed. R.

---

[4]This and other unpublished opinions cited for persuasive value.  See 10th Cir. R. 32.1(A).

Civ. P. 56(e)(2) (2009).  Thus, the Court finds Plaintiff has failed to controvert the following facts presented in support of Defendants' motions for summary judgment.

**A.   Challenge to validity of search warrant, issued December 17, 2009 (Count 1)**

1.   On or about December 17, 2009, Defendant Brewington, an Investigator for the 11th Judicial District Drug Task Force, see Dkt. # 33, Ex. 6, submitted a detailed Affidavit for Search Warrant for a residence where Plaintiff was residing. See Dkt. # 32, Ex. 1.

2.   Washington County District Judge Curtis DeLapp issued the Search Warrant on December 17, 2009 at 4:11 p.m. See Dkt. # 32, Ex. 2.

3.   Law enforcement officials, including Officers Brewington, Newell, Shelts, and Tayrian, executed the Search Warrant on December 18, 2009, at approximately 9:00 a.m. See Dkt. # 33, Exs. 6, 7, and 8.

4.   Based on evidence recovered during the search of the residence, Plaintiff was charged, in Washington County District Court, Case No. CF-2009-506, with Trafficking in Illegal Drugs (Count 1), two counts of Unlawful Possession of Controlled Drug With Intent to Distribute (Counts 2 and 3), Possession of Firearm, After Former Conviction of a Felony (Count 4), and Knowingly Concealing Stolen Property (Count 5).  See Dkt. # 33, Ex. 4.  He was also charged with Possession of Drug Paraphernalia, Misdemeanor, in Washington County District Court, Case No. CM-2009-606. See Dkt. # 33, Ex. 5.

5.   Plaintiff was convicted by a jury of Trafficking in Illegal Drugs, Unlawful Possession of Marijuana With Intent to Distribute, and Possession of Drug Paraphernalia.  See Dkt. # 33, Exs. 12 and 13.  His convictions were affirmed on direct appeal by the Oklahoma Court of Criminal Appeals. See Dkt. # 33, Ex. 14.

4

6.      Plaintiff never challenged the validity of the search warrant, either during his criminal

proceedings or on direct appeal.  See Dkt. # 33, Exs. 6 and 14.

**B.   Excessive use of force (Count 2)**

1.      Defendant Newell, a CLEET (Council on Law Enforcement Education and Training)

certified police officer for the City of Bartlesville, assisted with execution of the Search

Warrant at Plaintiff's residence on December 18, 2009.  See Dkt. # 33, Ex. 7.

2.      Prior to execution of the search warrant, Defendant Newell was informed that "it was a no

knock search warrant based on information that Plaintiff always carried a gun or had one

close by." Id. at ¶ 4.

3.      During execution of the search warrant, Defendant Newell was responsible for clearing and

securing the southwest bedroom of the residence.  Id. at ¶5.

4.      Upon entering the bedroom, he saw no one so he proceeded to check the bedroom's closet.

Id. at ¶ 6. When he opened the closet door, he saw the legs of a person hiding behind clothes

hanging in the closet. Id. The person was Plaintiff, Billy Joe Bailey.

5.      Defendant Newell immediately issued commands for Plaintiff to show his hands and step

out of the closet. Id. Plaintiff did not comply with the commands. Id.

6.      Fearing that Plaintiff could be armed, Defendant Newell forcefully removed him from the

closet by pulling him by his legs from the closet. Id. at ¶¶ 6-7. Plaintiff began to struggle. Id.

at ¶ 7.  Defendant Newell used a tactic, taught during his CLEET training, known as an "arm

bar" to take Plaintiff to the floor. Id. Defendant Newell then planted his knee "firmly" into

Plaintiff's back to secure him for handcuffing.  Id.

7.      Officer Shelts assisted with handcuffing Plaintiff. Id. at ¶ 9. Once he was handcuffed and secured, Plaintiff was escorted out of the residence and taken to the Bartlesville City Jail. Id.; Dkt. # 33, Ex. 8.

8.      Once he was at the Bartlesville City Jail, Plaintiff complained of rib pain. See Dkt. # 33, Ex. 8 at ¶ 11.  Officer Shelts transported him to the hospital where x-rays revealed that Plaintiff had fractured three ribs on his left side. See Dkt. # 33, Ex. 11. He was prescribed Lortab, a narcotic, for pain. Id. In addition to the prescription for Lortab, Plaintiff was advised by the hospital ER personnel that he could take "Tylenol (acetaminophen) or ibuprofen (Advil, Motrin) for pain unless another medicine was prescribed." See Dkt. # 34, Ex. 15 at page 21 of 29.

9.      Jail staff returned Plaintiff to the hospital's ER at around midnight on December 18-19, 2009. See id. at page 15 of 29 (reflecting that Plaintiff was seen at 00:15 on December 19, 2009). Plaintiff complained of broken ribs on the left, chest pain, and an abscessed tooth. Id. at page 16 of 29.  He also reported that he had been coughing up blood. Id. The results of the exam confirmed left rib fractures and a Lortab prescription for pain. Id. at page 18 of 29.

## C.  Adequacy of medical care provided at Washington County Jail (WCJ)

1.      On December 19, 2009, Plaintiff was booked into the WCJ. See Dkt. # 34, Ex. 1. He was released to the custody of the Oklahoma Department of Corrections on January 28, 2011. Id.

2.      Plaintiff arrived at WCJ with pain medication, Lortab. See id., Ex. 6. He advised that he had been to the ER for rib fractures. Id.

3.      Upon arrival at the WCJ, Plaintiff was placed in a "security cell," for his own safety and to allow him to rest quietly to minimize movement and resulting pain. See id., Ex. 18.  In addition, the medical staff could better monitor Plaintiff's condition and progress. Id.

4.      On December 26, 2009, Plaintiff was moved into the general population at his request. Id.; Dkt. # 34, Ex. 7.

5.      During the period of time Plaintiff was at WCJ, the jail contracted with a local physician, Dr. Mark Erhardt, to provide medical services to jail inmates. See id., Ex. 17.

6.      Dr. Erhardt did not allow narcotics into the WCJ unless he believed there was no reasonable alternative.  See id., Ex. 22.

7.      Nurses at WCJ can only provide medications as directed or approved by Dr. Erhardt. Id., Ex. 18.

8.      Plaintiff was given ibuprofen once on the day he entered WCJ and numerous times throughout each day from that time until it was determined at a medical check-up that his fractured ribs had healed. Id.; Dkt. # 34, Ex. 8 (Medication Given Log).

9.      When Plaintiff complained, on February 23, 2010, that he had been coughing up blood, he was taken to the hospital on February 24, 2010, where the medical staff found no evidence of any coughing of blood or other fluids and also determined that the rib fractures were healed.  See id., Ex. 18 at ¶¶ 20-22.

### III.  ANALYSIS

**A.  Summary judgment standard**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp.

v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986);

Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any."  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th

Cir. 1996).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is,

if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994).

**B.  Dismissal standard**

Federal courts must identify any cognizable claim and dismiss any claim which is frivolous,

malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief. See 28 U.S.C. § 1915A(b). To avoid dismissal for failure

to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed

to be true, that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 555 (2007). The complaint must contain  "enough facts to state a claim to relief that

is plausible on its face." Id. at 570. A court must accept all the well-pleaded allegations of the

complaint as true, even if doubtful in fact, and must construe the allegations in the light most

favorable to the plaintiff.  Id. at 555. However, "when the allegations in a complaint, however true,

could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed.

Id. at 558. The Court applies the same standard of review for dismissals under 28 U.S.C. §

1915(e)(2)(B)(ii) that is employed for Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim. Kay v. Bemis, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

A *pro se* plaintiff's complaint must be broadly construed under this standard. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). The generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A reviewing court need not accept "mere conclusions characterizing pleaded facts." Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990); see also Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations and citations omitted)). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## C.  Plaintiff's claims

### 1. Count 1 -- Validity of search warrant

As his first cause of action, Plaintiff claims that the search conducted on December 18, 2009, was illegal because the Affidavit for Search Warrant was prepared with "reckless disregard" for the truth and was based on "inherently unreliable probable cause information." See Dkt. # 11. He lodges this claim against Defendants Brewington and Newell. He further alleges that Defendant City "failed to properly/adequately train, supervise and discipline its law enforcement officers" with regard to the preparation of probable cause affidavits.  Id.

9

The Court finds that Plaintiff's claim challenging the validity of the search warrant is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). In <u>Heck</u>, the Supreme Court held that:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

<u>Heck</u>, 512 U.S. at 486-87. Thus, if a judgment in favor of the plaintiff would necessarily imply the invalidity of his continued confinement, then the § 1983 complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. <u>Heck</u>, 512 U.S. at 487. An action under 42 U.S.C.1983 seeking damages for an alleged illegal search and seizure of evidence upon which criminal charges are based is barred by <u>Heck</u> until criminal charges have been dismissed or the conviction has been overturned.  It is clear from Plaintiff's complaint that his convictions, based on evidence obtained from the search of his residence, have not been invalidated.  In addition, Defendants have provided a copy of the Summary Opinion, entered by the Oklahoma Court of Criminal Appeals on December 20, 2011 (Dkt. # 33, Ex. 14), affirming his convictions on direct appeal.  None of the claims raised by Plaintiff on direct appeal challenged the validity of the Affidavit supporting the search warrant. <u>Id.</u>  Therefore, under <u>Heck</u>, Plaintiff's first cause of action must be dismissed without prejudice. The summary judgment record demonstrates that there is no genuine issue as to any material fact and that Defendants Brewington and Newell are entitled to judgment as a matter of law.  Therefore, entry of summary judgment in favor of those Defendants is appropriate as to Plaintiff's claim challenging the legality of the search warrant, as raised in Count 1, and their motion for summary judgment shall be granted.

Moreover, Plaintiff does not allege any facts that would support a reasonable inference that the City failed to train its police officers in the preparation of search warrants and that the alleged failure to train amounted to deliberate indifference to the Plaintiff's constitutional rights. A municipality can be held liable under a failure to train theory. However, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). Significantly, "a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 406-07 (1997). Thus, "a plaintiff must show that the municipality's action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights." Id. at 404. In this case, Plaintiff has failed to demonstrate that Defendant City engaged in conduct so general or widespread as to constitute a custom of misconduct. Furthermore, Plaintiff makes only conclusory, unsupported allegations concerning the existence of "a long-term customary practice" regarding preparation of search warrant affidavits. He has failed to controvert Defendants' evidence regarding the police officers' training in narcotics investigation. See Dkt. # 33, Exs. 6, 7, and 8. The summary judgment record demonstrates that there is no genuine issue as to any material fact and that Defendant City is entitled to judgment as a matter of law. Therefore, entry of summary judgment in favor of that Defendant is appropriate as to Plaintiff's claim that the City failed to train its police officers in preparation of

search warrant affidavits, as raised in Count 1, and the City's motion for summary judgment shall be granted.

### 2.  Count 2 -- Excessive use of force

As his second cause of action, Plaintiff claims that without provocation and without justification, Defendant Newell used "excessive physical force" and "assault and battery" on Plaintiff, resulting in serious injury and harm. See Dkt. # 11 at 2a-3. Plaintiff also complains that Defendants Brewington and Newell did not promptly seek medical attention for Plaintiff after he complained of injuries sustained during his arrest. Id. at 2(D), 2(E). Lastly, Plaintiff alleges that Defendants Brewington and Newell "attempted to cover-up, conceal and insulate the Def. Newell's excessive use of force assault and battery." Id. at 2(F). Defendants seek summary judgment on these claims, claiming that there was no Fourth Amendment violation.  See Dkt. # 33.

Defendant Newell's use of force against Plaintiff is analyzed under the Fourth Amendment which guarantees citizens the right to be free from unreasonable searches and seizures.  Graham v. Connor, 490 U.S. 386, 388 (1989); Terry v. Ohio, 392 U.S. 1, 8 (1968). The Fourth Amendment standard governing excessive force claims is well settled. "[L]aw enforcement officers must be 'objectively reasonable' in their searches and seizures." Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991).  According to the Supreme Court,

> Determining whether force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . . The reasonableness of a particular use of force must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

Graham, 490 U.S. at 396 (alterations, citations, and quotations omitted).  A court "must assess reasonableness from the perspective of a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight,' and consider that 'police officers . . . make split-second judgments-in circumstances that are tense, uncertain and rapidly evolving-about the amount of force necessary in a particular situation.'" Blossom v. Yarbrough, 429 F.3d 963, 967 (10th Cir. 2005) (quoting Graham, 490 U.S. at 396-97).  To evaluate excessive force, the Court views the facts from the perspective of the officer. See Graham, 490 U.S. at 396-97.  The focus of the inquiry is on the circumstances as they existed at the moment force was used. Id. In evaluating an excessive force claim, courts are to consider the totality of the circumstances. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004) (citing Sevier v. City of Lawrence, 60 F.3d 695, 699 (10th Cir. 1995)).

Applying Graham and considering the totality of the circumstances, the Court finds that Officer Newell used a reasonable amount of force to subdue and handcuff Plaintiff.  The evidence, viewed in the light most favorable to Plaintiff, shows that, while the officers were executing a narcotics search warrant, an inherently dangerous activity, Plaintiff failed to come out of the closet where he was hiding, as ordered by Newell. Defendant Newell could not ascertain whether Plaintiff was armed when he was in the closet. It is clear that it was reasonable for Defendant Newell to use some amount of force to protect himself, his fellow officers, and Plaintiff during the encounter. After Plaintiff failed to comply with Defendant Newell's commands, Defendant Newell had to use a reasonable amount of force to extricate Plaintiff from the closet and to secure Plaintiff after he initially resisted.  Nothing in the record suggests and Plaintiff does not allege that Defendant Newell

13

or any other defendant continued to use force after Plaintiff was handcuffed and secured. Considering Plaintiff's initial refusal to cooperate and the tense nature of the situation, the amount of force used by Defendant Newell was reasonable under the circumstances. The Court finds that the summary judgment evidence on file shows that there is no genuine issue as to any material fact and that Defendant Newell is entitled to judgment as a matter of law   His motion for summary judgment shall be granted as to the excessive use of force claim raised in Count 2.

Furthermore, Defendants are entitled to summary judgment on Plaintiff's claims that they delayed seeking medical attention for him and attempted to cover-up the excessive use of force by Defendant Newell.  The standards governing a prisoner's right to receive adequate medical care are discussed in more detail below.  With regard to Plaintiff's allegation that Defendants Brewington and Newell delayed Plaintiff's access to medical care, it is well established that a delay in medical care only constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001).  In this case, Plaintiff states that he was taken to the hospital for treatment of his injuries approximately fifteen minutes after he was booked-in at the Bartlesville City Jail. See Dkt. # 11 at 2(F).  Hospital records reflect that Plaintiff was being examined by 11:34 a.m., on December 18, 2009. See Dkt. # 33, Ex. 11.  The search warrant was executed at approximately 9:00 a.m. on December 18, 2009. See id., Ex. 7.  Thus, Plaintiff received medical care within 2 ½ hours of the incident resulting in injury to his ribs.  Significantly, he has not alleged that any delay in receiving medical treatment "resulted in substantial harm." Oxendine, 241 F.3d at 1276. The Court finds that the summary judgment evidence on file shows that there is no genuine issue as to any material fact regarding Plaintiff's

claim that Defendants Brewington and Newell failed to request medical treatment promptly and those Defendants are entitled to judgment as a matter of law.

Lastly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim that they attempted to cover-up and conceal the use of excessive force by Defendant Newell.  First, Plaintiff's claim is conclusory and lacking in factual support. Of greater significance, the Court has determined above that Defendants are entitled to summary judgment on Plaintiff's claim of excessive use of force. The Court finds that the summary judgment evidence on file shows that there is no genuine issue as to any material fact as to Plaintiff's claim that Defendants Brewington and Newell attempted to cover-up or conceal Defendant Newell's alleged excessive use of force, as the force used was objectively reasonable under the circumstance, and those Defendants are entitled to judgment as a matter of law.

### 3.  Count 3 -- Adequacy of medical care

In Count 3, Plaintiff complains that he was denied adequate medical care for injuries sustained during his arrest. See Dkt. # 11. Specifically, he complains that Defendants were "deliberately indifferent to the plf's serious physical injuries and serious medical access, attention, treatment and care and treatment aid needs in violation of plf's 4th USCA rights." Id. at 3. Plaintiff lodges his complaints against Defendants Brewington and Newell, as well as "Johnson, Abraham, Smith, Silvers, Megan, and Washington County." Plaintiff's claims against Defendants Brewington and Newell are addressed and resolved in Part III(C)(2) above. In addition, despite the Court's explicit admonition to Plaintiff that all defendants had to be named in the caption of his amended complaint, see Dkt. # 3, the caption of the amended complaint does not include defendants named Johnson and Abraham. Therefore, those individuals were not served and are not part of this

litigation.  Also, as discussed above, Plaintiff failed to effect timely service of process as to Defendant Smith. For that reason, Defendant Smith is dismissed without prejudice from this action.

The Court will address Plaintiff's allegations raised in Count 3 against Defendants Rick Silver, Megaen Davis, and Washington County.  In part (B) of Count 3, Plaintiff complains that he was not given the narcotic pain medication prescribed by medical personnel at the hospital ER, that he was placed in "segregational-punitive confinement" from 12/19/2009 through 12/24/2009 where he received no medical examinations or treatment and where he was denied pain medication, that he was transferred to the general population without any medical examination or assessment, that Defendant Davis repeatedly denied his requests for pain medication, and that Defendant Silver "is liable for the moving force defacto customs, practices, usages and policy of medical deliberate indifference" at the WCJ. Id. at 2(G)-2(J).  Defendant County filed a motion to dismiss (Dkt. # 36). Defendants Silver and Davis argue that they are entitled to summary judgment and qualified immunity. See Dkt. # 35.

### a. Washington County shall be dismissed

Defendant County seeks to be dismissed from this action, arguing that the County is an improperly named defendant.  See Dkt. # 36. Citing Okla. Stat. tit. 19, § 4, the County asserts that it should have been sued as "Board of County Commissioner of the County of  Washington." See Dkt. # 36.  In addition, the County argues that even if it had been properly named, Plaintiff's claims would be subject to dismissal because the Board of County Commissioners has no final policy-making authority for operation of the WCJ.[5]

_____

[5]The Court notes that in his original complaint (Dkt. # 1), Plaintiff named the "Washington County Board of County Commissioners" as a defendant. By Order filed December 5, 2011 (Dkt. # 3), the Court determined that names provided by Plaintiff for some defendants were inadequate,

The Court agrees with the County's arguments. Under Oklahoma law, the Sheriff is the only elected official charged with keeping the county jail and the custody of the jail inmates. See Okla. Stat. tit. 19, § 513. As a result, the Board of County Commissioners, even if properly named, cannot be held liable for the medical care provided at the WCJ. See Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988) ("Under Oklahoma law, the Board [of County Commissioners] has no statutory duty to hire, train, supervise, or discipline the county sheriffs or their deputies."). In this case, Plaintiff does not allege that the Board of County Commissioners undertook responsibility for jail officials. As a result, even if Plaintiff had properly named the Board of County Commissioners of the County of Washington as a defendant, his amended complaint would fail to state a claim upon which relief may be granted. Therefore, the Court shall grant the motion to dismiss filed by Defendant Washington County.

### b. Defendants Silver and Davis are entitled to summary judgment

Plaintiff alleges that Defendants Silver and Davis provided inadequate medical care while Plaintiff was in custody at the WCJ. A pretrial detainee's right to receive adequate medical care is protected by the Fourteenth Amendment and the standard for evaluating his claim under the Fourteenth Amendment is the same as the standard under the Eighth Amendment: a plaintiff must demonstrate "deliberate indifference to serious medical needs." Meade, 841 F.2d at 1530; Garcia

---

and that certain improperly named defendants, specifically, "Bartlesville Police Department" and "Washington County Jail," were not suable entities and would be dismissed. Plaintiff was also advised that, pursuant to Fed. R. Civ. P. 10(a), all defendants must be named in the caption of the complaint. Plaintiff was directed to file an amended complaint to provide full names for defendants and to name all defendants in the caption. See Dkt. # 3. On March 13, 2012, Plaintiff filed his amended complaint (Dkt. # 11). While he added "Washington County" as a named defendant, he chose to omit "Washington County Board of County Commissioners" as a defendant. See Dkt. # 11.

v. Salt Lake County, 768 F.2d 303, 307 (10th Cir. 1985). "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 827 (1994).  In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court clarified that the deliberate indifference standard has two components:  (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind.  Id. at 298-99.  Negligence does not state a claim under § 1983 for deliberate indifference to medical needs.  See Green v. Branson, 108 F.3d 1296, 1303 (10th Cir. 1997). "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."  Oxendine, 241 F.3d at 1277 n.7 (internal citations and quotation marks omitted). A delay in medical care only constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. Id. at 1276.

To the extent Plaintiff sues Defendants Silver and Davis in their individual capacity, Plaintiff has failed to controvert Defendants' evidence demonstrating entitlement to summary judgment. Personal participation is an essential element of a § 1983 claim. Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976); see also Garrett v. Stratman, 254 F.3d 946, 950 n.4 (10th Cir. 2001) (noting that medical official must have "played a role in the challenged conduct" to be liable for an Eighth Amendment violation). As a result, government officials have no vicarious liability in a section § 1983 suit for the misconduct of their subordinates because "there is no concept of strict supervisor liability under section 1983." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (quotation omitted). Instead, a supervisor is liable only if he is "personally involved in the constitutional violation and a sufficient causal connection . . . exist[s] between the supervisor and the constitutional violation." Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006)

(quotation omitted); see also Meade, 841 F.2d at 1527 (stating that to establish a § 1983 claim against a supervisor, the plaintiff must show that an "affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise" (quotations and alterations omitted)).

Defendant Rick Silver is Sheriff of Washington County. See Dkt. # 34, Ex. 16. The uncontroverted facts demonstrate that Defendant Silver did not participate in the medical care provided to Plaintiff. See id. Plaintiff cannot hold Defendant Silver liable in his individual capacity based on vicarious liability.  Therefore, the Court finds that Defendant Silver, in his individual capacity, is entitled to summary judgment.

As to Defendant Davis, the uncontroverted evidence presented by Defendants demonstrates that Plaintiff received medical care for his fractured ribs while he was in custody at the WCJ, he simply disagreed with the course of treatment. Nothing in the record suggests that Defendant Davis acted with deliberate indifference in providing medical care to Plaintiff. Prior to being booked-in at the WCJ, Plaintiff was treated at the hospital ER for his injuries. See Dkt. # 34, Ex. 15. X-rays confirmed "fractures of the left third fourth and fifth ribs anterolaterally." Id. at page 4 of 29. The medical records do not show that Plaintiff also suffered fractured ribs on the right side, as he alleges in his complaint. Nor do the medical records reflect that Plaintiff complained of or received treatment for injuries to his mouth, as he alleges in his complaint. After being treated at the hospital, Plaintiff was booked-in to the WCJ by Booking Officer Janet Smith. See Dkt. # 34, Ex. 20. When he was booked-in at WCJ, Plaintiff was placed in administrative segregation, or a "security cell," due to the nature of his injuries. Id. This was done for his own safety, as well as the safety of the other inmates. Id. The hospital discharge papers directed Plaintiff to avoid "heavy lifting or

strenuous exertion" while his ribs healed. See Dkt. # 34, Ex. 15 at page 21 of 29.  Although Plaintiff complains of being placed in a "security cell," that cell assignment, as opposed to being placed in the general population, complied with the hospital's directive for Plaintiff to avoid strenuous exertion. In addition to complaining about being placed in a "security cell," Plaintiff also complains that he was eventually removed from the "security cell" to the general population. However, the records demonstrate that, on December 26, 2009, Plaintiff was moved into the general population at his own request because "he wanted to be moved to a cell where he can play cards, there is nothing wrong with the subject medical." See Dkt. # 34, Ex. 7.  The uncontroverted evidence demonstrates that jail officials were not deliberately indifferent to Plaintiff's serious medical condition in making his cell assignments.

Plaintiff also complains that, while he was at the WCJ, he was not given Lortab as prescribed by hospital personnel. Lortab is a narcotic used to treat pain. However, at the WCJ, no prescription medications were to be given to any inmate absent approval from the facility physician, Dr. Erhardt. See Dkt. # 34, Ex. 20.  Dr. Erhardt's philosophy was "to limit the introduction of a controlled dangerous substance or narcotic into the Jail," and to "generally prescribe to the Jail a non-narcotic substitute pain reliever such as ibuprofen."  See Dkt. # 34, Ex. 22 at ¶ 8.The medication records maintained by the WCJ confirm that Plaintiff was not given Lortab while at the WCJ. See Dkt. # 34, Ex. 8 ("Washington Sheriff Office Medication Given Log"). Instead, the records show that from December 19, 2009, through February 23, 2010, Plaintiff was given ibuprofen for pain every day. Id. On February 24, 2010, Plaintiff was taken to the ER for a follow-up on his fractured ribs. See Dkt. # 34, Ex. 18. At that examination, it was determined that his fractured ribs had healed. Id. at ¶¶ 21-22. As a result, medical personnel at WCJ stopped giving Plaintiff ibuprofen for pain. Id.

Thus, the record demonstrates that Plaintiff received treatment for his fractured ribs, he simply disagreed with the course of treatment he received.  In addition, the record demonstrates that Defendant Davis did not participate in the decision to use ibuprofen, rather than Lortab, to treat Plaintiff's pain. The Court finds that the summary judgment record shows that there is no genuine issue as to any material fact regarding the medical care received by Plaintiff at the WCJ.

The Court further finds that, under the facts alleged in the amended complaint, Defendants Silver and Davis are entitled to qualified immunity. The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. See Pearson v. Callahan, 555 U.S. 223 (2009). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The qualified immunity inquiry requires analysis of two distinct questions: (1) whether, when taken in the light most favorable to the plaintiff as the party asserting the injury, the plaintiff demonstrates sufficient facts to show the public official's conduct violated plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated was clearly established at the time of the alleged violation in a sufficiently analogous factual setting. See Saucier v. Katz, 533 U.S. 194, 201 (2001), *abrogated in part by* Pearson, 555 U.S. 223.  While it is often desirable to proceed initially with the first prong, a finding of qualified immunity may be appropriate on either question. See Pearson, 129 S.Ct. at 818.  If both inquiries can be met in the affirmative, then the defendant is not entitled to qualified immunity. See Saucier, 533 U .S. at 201.

"In rebutting a qualified immunity claim at the summary judgment level, a plaintiff can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff)." Axson-Flynn v. Johnson, 356 F.3d 1277, 1299 (10th Cir. 2004) (internal citation

and quotation marks omitted). "Once the plaintiff makes this showing, the defendant bears the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. at 1299-1300. "More specifically, the defendant must show that there are no material factual disputes as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time." Id. at 1300. "At all times during this analysis, we evaluate the evidence in the light most favorable to the nonmoving party." Id.

The Court determined above that Defendant Silver's personal participation in providing medical care to Plaintiff has not been shown. Defendant Davis did not participate in deciding which pain medication to give Plaintiff. The evidence provided by Defendants, viewed in the light most favorable to Plaintiff, does not demonstrate that any Defendant was deliberately indifferent to Plaintiff's medical condition or that Plaintiff was denied adequate medical care in violation of his constitutional rights. Accordingly, Defendants Silver and Davis are entitled to qualified immunity. Therefore, the motion for summary judgment filed by Defendants Silver and Davis, in their individual capacity, shall be granted.

To the extent Plaintiff sues Defendants Silver and Davis in their official capacity, Plaintiff has again failed to controvert Defendants' summary judgment evidence. Claims against a government officer in his official capacity are actually claims against the government entity for which the officer works. Kentucky v. Graham, 473 U.S. 159, 167 (1985). Under § 1983, a municipality may not be held liable on a theory of respondeat superior. Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Instead, the plaintiff must show "that the unconstitutional actions of an employee were

representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." <u>Camfield v. City of Oklahoma City</u>, 248 F.3d 1214, 1229 (10th Cir. 2001) (internal quotation marks omitted). To establish municipal liability, a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989). "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." <u>Hinton v. City of Elwood</u>, 997 F.2d 774, 782 (10th Cir. 1993).

As discussed above, Plaintiff has failed to demonstrate any violation of his constitutional rights by any named defendant.  The lack of a constitutional violation by the officers of a municipality precludes a finding of municipal liability. <u>Hinton</u>, 997 F.2d at 782; <u>Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs</u>, 151 F.3d 1313, 1317 (10th Cir.1998) ("A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."). In response to Defendants' motion for summary judgment, Plaintiff fails to controvert Defendants' summary judgment evidence. Therefore, to the extent Plaintiff has sued Defendants Silver and Davis in their official capacity, those Defendants are entitled to judgment as a matter of law and their motion for summary judgment shall be granted.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.    The motion for summary judgment filed by Defendants Brian Brewington, Troy Newell, and the City of Bartlesville (Dkt. # 33) is **granted**.

2.    The motion for summary judgment filed by Defendants Rick Silver and Megaen Davis (Dkt. # 35) is **granted**.

3.    The alternative motion to dismiss (Dkt. # 35) is **declared moot**.

4.    The motion to dismiss filed by Defendant Washington County (Dkt. # 36) is **granted**.

5.    Defendant Janet Smith is **dismissed without prejudice** based on Plaintiff's failure to effect timely service of process.

6.    A separate judgment in favor of Defendants shall be entered in this matter.

DATED THIS 22nd day of March, 2013.

James H. Payne
United States District Judge
Northern District of Oklahoma